EL CAMBIO GOLD MINING CO. v. CUCHARAS MINING CO. et al.

(Circuit Court of Appeals, Ninth Circuit. August 2, 1909.)

No. 1,669.

SHIPPING (§ 27*)—SALE OF VESSEL—ACTION FOR PRICE—FAILURE TO DELIVER.
    A purchaser of a half interest in a steamer, which contracted to pay therefor one-half her cost, to be shown by an itemized bill to be furnished by the seller, and on the transfer of such half by a good and sufficient bill of sale free from liens, *held* not bound for the purchase price, where no bill of the cost nor bill of sale was tendered prior to the time when the vessel was lost.

    [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 27.*]

In Error to the Circuit Court of the United States for the Southern Division of the Southern District of California.

J. B. McLaughlin and John L. Fleming, for plaintiff in error.

J. H. Shankland and J. P. Chandler, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

ROSS, Circuit Judge. The plaintiff in error, a corporation organized and existing under the laws of South Dakota, brought this action in the court below to recover of the defendants in error money alleged to be due upon contract. The cause was tried before the court without a jury upon stipulation of the parties, and resulted in a judgment of nonsuit. The contract was in writing, bore date October 17, 1904, and provided for the sale by the Cambio Gold Mining Company to the Cucharas Mining Company of a half interest in a certain steamship, called "Arrow," her tackle, apparel, etc., after the vessel should be taken by the vendor to the port of Mazatlan, Mexico, and there placed under the Mexican flag, and, upon the consummation of such sale, further providing for the future operation of the ship by the vendor and vendee through a corporation to be organized by them under the laws of the territory of Arizona, upon certain terms and conditions specified in the contract, but which need not be detailed. The contract expressly declared the plaintiff in error to be the owner of the ship, and contained an express warranty on its part:

    "That said vessel, with her tackle, apparel, furniture, boats, and other appurtenances, is now, and shall continue to be, until the transfer at Mazatlan, republic of Mexico, of a half interest to the vendee according to the terms and stipulations of this instrument, wholly and exclusively the property of the vendor, and free of liens, incumbrances, and claims of any and every description."

It also contained these express covenants on the part of the vendor: To properly equip the vessel and cause her to be navigated as expeditiously as possible to the port of Mazatlan, and there to place her under the Mexican flag, with all the proper and legal forms; that immediately upon the vessel reaching Mazatlan in good order, and her being there placed under the Mexican flag, the vendor should deliver to the vendee an itemized bill, accompanied by proper vouchers

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in writing, when vouchers could be obtained, which statement should include the original cost of the vessel, her tackle, apparel, furniture, boats, appurtenances, etc., the expenses for fuel and navigation to Mazatlan from Port Townsend, Wash., where she then was, the expense of placing the vessel under the Mexican flag, and any and every other necessary expense incurred in the premises, and thereupon the vendor should tender and deliver to the vendee a proper bill of sale or other instrument sufficient to pass the title to a half interest in the vessel and her equipment to the vendee upon the concurrent payment on its part to the vendor, in lawful money of the United States, of one-half of the proper total of the aforesaid itemized statement; the Cucharas Mining Company expressly covenanting:

"To purchase, at the time and place and in the manner aforesaid, the half interest aforesaid, and well and truly to pay the purchase price, to be made certain in the manner aforesaid."

The agreement contained the further provision that any sum of money advanced by the vendee for the benefit or on account of the vessel, at the request of "the president, manager, master, or superintendent," between the time of the execution of the contract "and the time of transfer as aforesaid, shall be and remain a lien, without interest, chargeable against said vessel, and to be credited upon the purchase price as aforesaid when ascertained." The agreement also contained provisions for the organization by the vendor and vendee of a corporation under the laws of Arizona, the capital stock of which should be owned equally by the vendor and vendee, for the future operation of the ship for the benefit of the parties interested.

The evidence introduced upon the trial showed that when the vendor got the vessel to Mazatlan it ascertained that under the laws of Mexico no ship carrying the Mexican flag could be operated by a foreign corporation, and that, upon that fact being brought to the notice of the Cucharas Mining Company, the president of that company, in a letter to the president of the El Cambio Gold Mining Company, wrote:

"I am in receipt of a letter from Mr. H. P. Durrell, inclosing letters from your attorneys, Taylor & Howat, and Messrs. Wholen & Bartning, of Mazatlan, stating that it is impossible for us to operate the steamship Arrow with a foreign company. We note that you think it best to organize a Mexican company with $50,000 capitalization. If it does not cost too much to organize this company, and cause too much delay on account of red tape, I think it would be the best way out of it If, however, the cost is excessive, and there will be great delay, I think it would be much better for you to do as your attorneys suggest, and transfer the vessel to your agents at Mazatlan, and operate the boat in their name, of course, having our ownerships set forth properly with a private contract. Inasmuch as most of the business will have to go through your agents' hands, I am inclined to think this would be the best way out of it. However, you are on the ground and understand the situation better than I do. Therefore we will leave the matter in your hands, and hereby give our consent to the necessary changes in our contract with your company to cover this operation of the steamer under the plan as set forth above."

In its amended complaint the plaintiff in error alleged:

"That the transfer of said vessel and her equipment and paraphernalia to said Mexican corporation was substituted for the agreement to transfer the one-half interest therein to the defendants."

The above letter does not sustain that averment, and there was no other proof tending to sustain it; and as it appeared from the evidence that the plaintiff in error never did deliver or tender to the contemplated vendee the itemized bill provided for by the contract, and never did deliver or tender to it any bill of sale or other instrument sufficient, or even purporting to pass to the vendee the half interest in the vessel and her equipment, as provided for in the written contract, and that the ship was lost before the consummation of the contemplated sale, the court below was clearly right in giving, as it did, a judgment for nonsuit against the plaintiff.

The judgment is affirmed.